[Cite as *State v. Kennell*, 2015-Ohio-4817.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO, :

    Plaintiff-Appellee, : CASE NO. CA2015-01-002

: O P I N I O N
- vs - 11/23/2015

:

SAMUEL T. KENNELL, :

    Defendant-Appellant. :

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2013 CR 0084

D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Samuel T. Kennell, #A695496, North Central Correctional Institution, P.O. Box 1812, Marion, Ohio 43302, defendant-appellant, pro se

**RINGLAND, J.**

{¶ 1} Defendant-appellant, Samuel T. Kennell, appeals from his conviction in the Clermont County Court of Common Pleas after he pled guilty to one count of kidnapping and one count of attempted murder. For the reasons discussed below, we affirm.

{¶ 2} On February 6, 2013, appellant was indicted on one count of attempted murder in violation of R.C. 2923.02(A), a first-degree felony, one count of felonious assault in

violation of R.C. 2903.11(A)(1), a second-degree felony, one count of felonious assault in violation of R.C. 2903.11(A)(2), a second-degree felony, and one count of kidnapping in violation of R.C. 2905.01(B)(2), a second-degree felony.

{¶ 3} On September 11, 2013, appellant pled guilty to one count of attempted murder and one count of kidnapping in exchange for the dismissal of the two counts of felonious assault. Additionally, as a part of the plea agreement, appellant was informed the minimum sentence he would receive would be seven years in prison and the maximum sentence he would receive would be 13 years in prison, as opposed to a maximum sentence of 19 years in prison.

{¶ 4} At the plea hearing, after a lengthy colloquy, appellant pled guilty to one count of attempted murder and one count of kidnapping. Additionally, the bill of particulars was stipulated to on the record and the state rendered additional facts. According to these facts, appellant purposefully attempted to cause the death of another when appellant sat down next to one victim, removed a knife, and then slit this victim's throat with the intention of killing him. Thereafter, appellant restrained the liberty of a second victim when he placed a knife to her throat and threatened to kill her.

{¶ 5} An initial sentencing hearing was scheduled for October 23, 2013. The court, however, did not have sufficient time to review the presentence investigation report, and thus, after discussing the presentence investigation report with appellant and his counsel and hearing testimony from several of appellant's friends and relatives, the court continued the hearing until November 7, 2013. At the November hearing, the court sentenced appellant to an aggregate term of ten years in prison.

{¶ 6} On January 2, 2015, appellant filed a motion for a delayed appeal, which we granted. Now on appeal, appellant asserts three assignments of error for review.

{¶ 7} Assignment of Error No. 1:

{¶ 8} THE APPELLANT'S FIFTH AMENDMENT RIGHT FOR DUE PROCESS WAS VIOLATED PURSUANT TO R.C. 2951.03(B)(2) AND CRIM.R. 32(A)(1) AND CONTRARY TO *UNITED STATES V. OSBORNE*[,] 291 F.3D 908 [6TH CIR.2002], WHILE SENTENCING THE APPELLANT WHEN THE COURT FAILED TO NOTE ON THE RECORD DURING THE SENTENCING HEARING THAT THE APPELLANT AND TRIAL COUNSEL HAD READ AND DISCUSSED THE PRESENTENCE INVESTIGATION REPORT BEFORE THE APPELLANT WAS SENTENCED AND THE COURT PASSED OVER THE APPELLANT'S STATEMENT OF FACTUAL INACCURACIES IN THE PRESENTENCE INVESTIGATION WITHOUT MAKING ANY FINDINGS.

{¶ 9} In his first assignment of error, appellant argues the court erred by failing to ask whether he had reviewed the presentence investigation report and by failing to make findings regarding factual inaccuracies contained in the presentence investigation report. We disagree.

{¶ 10} To support his argument, appellant relies on *United States v. Osborne*, 291 F.3d 908 (6th Cir.2002), a federal circuit court case that analyzes a sentencing court's requirements regarding a presentence investigation report under Fed.R.Crim.P. 32. In this instance, however, Fed.R.Crim.P. 32 is inapplicable. Rather, in Ohio, the sentencing court must comply with R.C. 2951.03.

{¶ 11} Pursuant to R.C. 2951.03(B)(1), when a presentence investigation report is prepared, the trial court "at a reasonable time before imposing sentence, shall permit the defendant or the defendant's counsel to read the report * * *." Further, R.C. 2951.03(B)(2) provides:

> Prior to sentencing, the court shall permit the defendant and the defendant's counsel to comment on the presentence investigation report and, in its discretion, may permit the defendant and the defendant's counsel to introduce testimony or other information that relates to any alleged factual inaccuracy

contained in the report.

**{¶ 12}** This statute also addresses requisite findings regarding alleged factual inaccuracies contained in a presentence investigation report. According to R.C. 2951.03(B)(5), if comments of the defendant or his counsel raise any factual inaccuracy in the presentence investigation report, then the trial court shall do one of the following: "(a) Make a finding as to the allegation; (b) Make a determination that no finding is necessary with respect to the allegation, because the factual matter will not be taken into account in the sentencing of the defendant." Compliance with R.C. 2951.03(B)(5) need not be explicit, and a court's failure to make requisite findings pursuant to the statute is harmless if "the record reflects that none of the trial court's findings or considerations would be affected in the least by the alleged inaccuracies in the report." *State v. Platz*, 4th Dist. Washington No. 01CA33, 2002-Ohio-6149, ¶ 18; Crim.R. 52.

**{¶ 13}** At the hearing on October 23, 2013, appellant's attorney stated he reviewed the presentence investigation report and discussed statements appellant made to the writer of the presentence investigation report with appellant. Further, appellant's attorney stated that "[appellant] accepts full responsibility for his transgressions, and he doesn't want to disturb the - - the plea based on comments made to a - - the PSI writer." The court then asked appellant whether the information as stated by his attorney was true, to which appellant replied, "Yes." The court then stated, "Because your words are important, and I want to make sure it's how you feel." Appellant replied, "It is."

**{¶ 14}** At the second hearing held on November 7, 2013, the following exchange took place:

> THE COURT: * * * You've reviewed the PSI, not that it's changed from the last time, and I think I continued it because I hadn't had enough time to digest it and then your memo was fairly recent, and so we - - I've done all that. Is there anything you want to add or subtract from the PSI?

[DEFENDANT'S ATTORNEY]: No, Your Honor, thank you.

Also at the second hearing, the following exchange took place:

THE COURT:  * * * here you are in the United States of America over a woman acting out like this.

THE DEFENDANT:  Can I say something?

THE COURT:  Well, yeah.  Yeah, I want you to say something. This is your time.

THE DEFENDANT:  It was over drugs not a female.

THE COURT: Okay.  Over drugs then.  Over drugs.  I mean the - - the report suggests otherwise.  But even over drugs * * * .

{¶ 15} As evidenced in the record, appellant and his counsel reviewed the presentence investigation report before the first sentencing hearing on October 23, 2013, and also had time to review the report before the second hearing on November 7, 2013. Additionally, the court questioned appellant and his counsel regarding the report at these hearings.  At the second hearing, appellant raised a factual inaccuracy contained in the presentence investigation report.  While the court indicated that the presentence investigation report stated appellant's motivation for committing the crimes stemmed from jealously issues over a woman, appellant contended he committed the crimes due to drug use.  The court conceded that the motivation may have been drugs, and thus implicitly made a finding regarding the alleged factual inaccuracy.  In any event, because appellant failed to show that the court specifically relied on this supposed erroneous information, any failure by the court to make such a finding was immaterial and amounts to harmless error.  *See* Crim.R. 52. Accordingly, appellant's first assignment of error is overruled.

{¶ 16} Assignment of Error No. 2:

{¶ 17} THE TRIAL COURT ERRED AND VIOLATED THE APPELLANT'S FOURTEENTH AMENDMENT RIGHT OF DUE PROCESS WHEN IT FAILED TO HOLD AN

ALLIED OFFENSE DETERMINATION HEARING PURSUANT TO *STATE V. LONG*, (1978) 53 OHIO ST.2D 91, 97 AND DETERMINE IF THERE WERE ALLIED OFFENSES.

{¶ 18} In his second assignment of error, appellant argues that the court erred by failing to hold a hearing to determine whether attempted murder and kidnapping are allied offenses of similar import. We disagree.

{¶ 19} Pursuant to R.C. 2941.25, Ohio's multiple-count statute, the imposition of multiple punishments for the same criminal conduct is prohibited. *State v. Brown*, 186 Ohio App.3d 437, 2010-Ohio-324, ¶ 7 (12th Dist.). Specifically, R.C. 2941.25 states:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 20} In order to determine which offenses are of dissimilar import that cannot be merged, the Ohio Supreme Court recently clarified the test to employ in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995. When conducting the analysis, if any of the following are true, a defendant may be convicted and sentenced for multiple offenses as the offenses cannot merge: (1) the offenses are of dissimilar import with separate, identifiable harm, (2) the offenses were separately committed, or (3) a separate animus or motivation was used to commit the offenses. *Id.* at ¶ 25. Two or more offenses of dissimilar import exist "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id.* at ¶ 23.

{¶ 21} In this instance, appellant pled guilty to one count of attempted murder and one count of kidnapping. The attempted murder count and kidnapping count were committed

against separate victims. At appellant's plea hearing, it was reiterated that appellant slit the throat of a man and then held a woman at bay with a knife. As the counts included separate victims, under the facts and circumstances of this case, kidnapping and attempted murder are offenses of dissimilar import and cannot be merged. As such, appellant's second assignment of error is overruled.

{¶ 22} Assignment of Error No. 3:

{¶ 23} THE APPELLANT'S SIXTH AMENDMENT RIGHT FOR EFFECTIVE ASSISTANCE OF COUNSEL WAS VIOLATED PURSUANT TO *STATE V. CHAMBERLIN*, [12TH DIST. NO. CA2013-04-004,] 2014-Ohio-4619[,] [ ] DUE TO TRIAL COUNSEL'S CUMULATIVE ERRORS.

{¶ 24} In his third assignment of error, appellant sets forth 14 alleged errors committed by his counsel at the trial court level. Appellant contends that these errors, construed together, amounted to cumulative error that rendered his counsel's performance deficient and resulted in prejudice. We disagree.

{¶ 25} To establish ineffective assistance of counsel, a defendant must show his trial counsel's performance was both deficient and prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989). With respect to deficiency, appellant must show his counsel's performance "fell below an objective standard of reasonableness." *Strickland* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and as a result, "judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691.

{¶ 26} When a plea is involved, a defendant is unable to claim he was "prejudiced by ineffective assistance of counsel, except to the extent that such ineffective assistance made

the plea less than knowing, intelligent, and voluntary." *State v. McMahon*, 12th Dist. Fayette No. CA2009-06-008, 2010-Ohio-2055, ¶ 33. In other words, "[w]hen a criminal defendant has admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *State v. Pardon*, 12th Dist. Warren No. CA2000-10-090, 2001 WL 848242, *1 (July 30, 2001), citing *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602 (1973).

**{¶ 27}** In felony cases, a court may not accept a guilty plea unless it complies with Crim.R. 11(C)(2) by addressing a defendant personally and performing the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
>
> (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
>
> (c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶ 28}** "In conducting this colloquy, the trial judge must convey accurate information to the defendant so that the defendant can understand the consequences of his decision and enter a valid plea." *State v. Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, ¶ 11. The court must verify the defendant understands the constitutional rights that he is waiving under Crim.R. 11(C)(2)(c) and strictly comply with its requirements, or the plea is invalid. *State v. Shavers*, 12th Dist. Butler No. CA2014-05-119, 2015-Ohio-1485, ¶ 11.

However, substantial compliance is only required for a court to comply with the nonconstitutional notification provisions contained in Crim.R. 11(C)(2)(a) and (b). *Id.* Under the substantial compliance standard, the appellate court must review the totality of the circumstances surrounding the defendant's plea and determine whether he subjectively understood the effects of his plea. *Givens* at ¶ 12.

{¶ 29} When a court complies with Crim.R. 11(C)(2), there is a presumption that the plea entered by a defendant was voluntary. *State v. Richards*, 12th Dist. Clermont No. CA97-06-059, 1997 WL 779084, *3 (Dec. 15, 1997). A defendant then bears the burden of rebutting this presumption by submitting supporting materials to indicate he is entitled to relief. *Id.* A defendant's own self-serving declarations or affidavits are insufficient to rebut a record that shows a plea was made voluntarily. *State v. Kapper*, 5 Ohio St.3d 36, 38 (1983).

{¶ 30} At the plea hearing the court engaged in a lengthy colloquy with appellant.

> THE COURT: Did you read or have read to you the front and the back of this written plea of guilty?
>
> THE DEFENDANT: It was summarized for me, Your Honor.
>
> * * *
>
> THE COURT: All right. Do you have any questions about it?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: You understand that by pleading guilty to Count 1 and Count 4 as we discussed you're making complete admissions of guilt that you committed those two offenses that are in the indictment and Counts 2 and 3 get dismissed; do you understand that?
>
> THE DEFENDANT: Yes, I do, Your Honor.

{¶ 31} The court then discussed the sentencing options and the maximum sentencing possibilities, including postrelease control. The court also detailed appellant's waiver of constitutional rights:

THE COURT:  All right.  Now, in addition to the rights we've just gone over that you've acknowledged an understanding to, we're going to go over your constitutional rights.  You understand you have the right to have a trial by jury of 12 people; all 12 people must agree upon your guilt; do you understand those rights?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT: And are you waiving those rights this morning in order to enter these pleas?

THE DEFENDANT:  Yes, I am, Your Honor.

THE COURT:  You understand if we had a trial the prosecutor must prove your guilt beyond a reasonable doubt on each element of each crime for which you are charged; do you understand that right?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Now, are you waiving that right this morning?

THE DEFENDANT:  Yes, I am, Your Honor.

THE COURT:   Do you understand if we had a trial that Mr. Rubenstein, your attorney, would have the right to question, confront, cross examine any witnesses who had testified against you at trial; do you understand that right?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  And are you waving that right this morning?

THE DEFENDANT:  Yes, I am, Your Honor.

THE COURT:  Do you further understand that if we had a trial Mr. Rubenstein could bring in witnesses that either he thought or you thought could be helpful to you at trial; do you understand that right?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Are you waiving that right this morning?

THE DEFENDANT:  Yes, I do.

THE COURT:  You further understand you could not be forced to testify against yourself at trial, and if you elected to stay silent during the trial that silence could not be used against you in an attempt to prove your guilt in this matter; do you under - - in

these matters; do you understand those rights?

> THE DEFENDANT: Yes, I do, Your Honor.
>
> THE COURT: And are you waiving those rights this morning?
>
> THE DEFENDANT: Yes, I am.
>
> THE COURT: Do you have any questions at this time?
>
> THE DEFENDANT: No, I don't, Your honor.

The court then asked the following:

> THE COURT: All right. And you've had enough time to think about these decisions, Mr. Kennell; is that correct?
>
> THE DEFENDANT: Yes, I have.
>
> THE COURT: And it's your desire then to withdraw your previous pleas of not guilty to Counts 1 and to Counts 4 and now enter pleas of guilty to Counts 1 and Count 4; is that correct?
>
> THE DEFENDANT: Yes, I do, Your Honor.

{¶ 32} In this instance, appellant does not dispute that the court complied with Crim.R. 11(C), and only four of his fourteen arguments relate to the voluntariness of his plea. First, appellant asserts his plea was involuntary because his counsel failed to inform him that the two counts of felonious assault were allied offenses of each other and lesser included offenses of attempted murder. Second, appellant contends his counsel advised him he would be making a plea pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160 (1970), meaning he would plead guilty while maintaining his innocence. Third, appellant argues he was coerced by his counsel with threats of an excessive sentence. Fourth, appellant argues he was under medication at the time of the plea, and despite his counsel's knowledge, counsel allowed appellant to proceed with the plea. None of appellant's arguments are supported by the record.

{¶ 33} The court engaged in an extensive colloquy with appellant. Appellant indicated

at sentencing that he was satisfied with his counsel and stated he was taking responsibility for Counts 1 and 4, which involved separate victims. At his plea hearing, appellant indicated that no one pressured him to take the plea. When asked whether he was under the influence of any medication that would affect his ability to make the decision to plea, he responded, "I am not." While appellant attached exhibits of his medication regimen to his brief, these exhibits were not before the court below and appellant failed to demonstrate that his trial counsel was aware of the medication.

{¶ 34} As the court below complied with Crim.R. 11(C) and appellant failed to rebut the presumption that his plea was voluntary, appellant was not deprived of effective assistance of counsel. As such, appellant's third assignment of error is overruled.

{¶ 35} Judgment affirmed.

M. POWELL, P.J., and HENDRICKSON, J., concur.